MAE LUNDEEN AND ANOTHER v. VINCENT HACKBARTH.
MARJORIE A. CLARK, SPECIAL ADMINISTRATRIX OF ESTATE OF JOSEPH R. BREIT, THIRD-PARTY DEFENDANT.

171 N. W. (2d) 87.

September 19, 1969—No. 41470.

*Jardine, Logan & O'Brien* and *Graham Heikes,* for appellant.

*DeParcq, Anderson & Perl* and *Richard G. Hunegs,* for respondents Lundeen.

PETERSON, JUSTICE.

Plaintiffs in this negligence action were granted summary judgment against defendant special administratrix of decedent's estate upon the issue of liability on grounds of estoppel by the verdict against defendant in other litigation arising out of the same injury-producing event. Our disposition of this issue upon appeal is dictated by the anomalous result which collateral estoppel would produce under the unusual facts of the case.

Plaintiffs, Clinton and Mae Lundeen, close friends of Joseph R. and Angeline Breit, were passengers in a new Buick automobile owned and driven by Joseph R. Breit, which was involved in a collision with an older-model Plymouth automobile owned and driven by defendant Vincent Hackbarth. The collision occurred on October 21, 1962, at the electrically controlled Broadway-Central intersection in northeast Minneapolis. Successive negligence actions were instituted to recover for personal injuries sustained by the three passengers. The sole question of fact, that of right-of-way, hinged upon an answer to this question: Which driver entered the intersection against the red light?[1]

The first action was that of Angeline Breit against defendant Hackbarth and defendant special administratrix of the estate of Joseph R. Breit, who died some time after this accident. Her injuries, apparently less severe than those of the Lundeens, consisted of a broken collarbone and a "gash" in the head that was simply sutured, with total medical and hospital expenses amounting to slightly over $200. Notwithstanding the unequivocal

---

[1] There was perfunctory interrogation as to speed and lookout, but, as the final argument confirmed, these aspects were of no significance.

testimony of Angeline Breit and both Lundeens that the light was green in favor of Joseph R. Breit's right-of-way over Hackbarth, the jury returned a verdict against the special administratrix, in the amount of $3,850, and exonerated defendant Hackbarth. Hackbarth, as the jury may well have divined, was uninsured.[2]

The second action, the subject of this appeal, was that of plaintiffs Clinton and Mae Lundeen against the same defendants, claiming $35,000 in general damages and $1,600 in special damages for medical and hospital expense. The Lundeens could not recover against the special administratrix of Joseph R. Breit if they testified—*as they did in the first action*—that the light was green for Breit's right-of-way.[3] The unconscionable result of

---

[2] He was insured, but by the then-defunct Allied Insurance Company. He appeared without counsel in his own halting defense, epitomized by this closing argument: "I'd like to say that I have defended myself the best I could, and I still think that I had the green light in my favor. And it's been awful hard for me to do that, to defend myself. I don't know. But I don't know how to go about giving a speech either, so that's about all I have to say."

[3] This was the testimony of Clinton Lundeen, who was in the front passenger seat:

"Q [Direct examination by counsel for defendant special administratrix] What if anything were you observing there as you were sitting?

"A Well, I was watching the signals.

"Q Okay. *What did you see by way of a signal at that time?*

"A *Everything was green.*

&ast; &ast; &ast; &ast; &ast;

"Q * * * About how far would you say you would have been from this curb line extension when you first observed that the signal was green?

"A Well, I could see that green light in the middle of the block anyway, or approaching Central.

"Q All right. Would you have an approximation as to feet or car lengths as to how far that would have been?

"A Hundred feet." (Italics supplied.)

And this was the testimony of Mae Lundeen, seated behind the driver:

"Q [Direct examinaton by counsel for defendant special administratrix] * * * Do you recall the car going up the incline then?

collateral estoppel would, without taint of perjury, now turn that traffic light from green to red by operation of law.

"A   Yes.

"Q   And you recall it approaching the level part which is near the intersection?

"A   Yes.

\* \* \* \* \*

"Q   What if anything were you doing as far as observation was concerned?

"A   Well, I was watching signal lights.

"Q   All right. What signal lights if any did you see?

"A   Well, I saw the one on the right-hand side going into Central.

\* \* \* \* \*

"Q   You were observing this signal light as you testified. Where was the first time that you observed it?

"A   As we were coming up the incline.

"Q   And you just started up the incline?

"A   Yes.

"Q   Okay. About how far away were you at that point, would you say?

"A   Well, I really don't know.

"Q   At that point you observed the light, and what color was it?

"A   It was green.

"Q   Now, you proceeded up to the incline to a point where it levels off?

"A   Yes.

"Q   *At any time after that did you observe the signal light?*

"A   *Well, before and after we got into the intersection it was still green.*

"Q   All right. You did observe it after you got into the intersection?

"A   Yes.

\* \* \* \* \*

"Q   [Cross-examination by counsel for Angeline Breit]   Now, was your view out the front windshield obstructed by Mr. Breit's head or by your husband's head?

"A   No.

"Q   It wasn't. You had a clear view?

"A   Yes.

"Q   When you ride—excuse me. When you were riding in this car on this morning, you indicated that you first looked at this light when

The opinion of Mr. Chief Justice Knutson in McCarty v. Budget Rent-A-Car, 282 Minn. 497, 502, 165 N. W. (2d) 548, 551, quoted this pertinent comment of Professor Currie in his article, *Civil Procedure: The Tempest Brews,* 53 Calif. L. Rev. 25, 37:

"* * * No legal principle, perhaps least of all the principle of collateral estoppel, should ever be applied to work injustice."

Collateral estoppel may not be applied to the facts of this case, we hold, because it would work a manifest injustice.

Reversed.

---

you were at the bottom of the hill approaching the intersection, is that correct?

"A  Well, yes. About that.

"Q  Do I understand your testimony that you continued to keep that green light in your vision until just before the accident happened?

"A  Yes.

\* \* \* \* \*

"Q  Is there any particular reason why, can you recall at this time, you observed that green light for such a long period of time?

"A  Well, when I'm in a car, I always watch signal lights." (Italics supplied.)

The testimony of Angeline Breit, whose case depended upon the same showing, was to the same effect as that of the Lundeens. The testimony of defendant Hackbarth, the only other person available to give evidence on this issue of fact, was, of course, to the contrary.